UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JILL MARIE MURA,
                        DECISION & ORDER

               Plaintiff,

                        16-CV-6159P

      v.

CAROLYN W. COLVIN,[1]
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**PRELIMINARY STATEMENT**

       Plaintiff Jill Marie Mura ("Mura") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 14).

       Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 11, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] On January 23, 2017, after this appeal was filed, Nancy A. Berryhill became Acting Commissioner of Social Security.

## BACKGROUND

**I.    Procedural Background**

Mura applied for SSI alleging disability beginning on November 1, 2012, due to asthma, anxiety, depression, degenerative disc disease, morbid obesity, bursitis in her left shoulder, arthritis in her knees, and acid reflux. (Tr. 258, 262).[2]  On February 19, 2013, the Social Security Administration denied Mura's claim for benefits, finding that she was not disabled.[3]  (Tr. 114).  Mura requested and was granted a hearing before Administrative Law Judge John P. Costello (the "ALJ").  (Tr. 29, 152, 196-98).  The ALJ conducted a hearing on September 18, 2014.  (Tr. 29-54).  In a decision dated November 24, 2014, the ALJ found that Mura was not disabled and was not entitled to benefits.  (Tr. 11-24).

On January 4, 2016, the Appeals Council denied Mura's request for review of the ALJ's decision.  (Tr. 1-4).  Mura commenced this action on March 11, 2016, seeking review of the Commissioner's decision.  (Docket # 1).

**II.    Relevant Medical Evidence[4]**

The record indicates that Mura began receiving primary care treatment from Rana Masood ("Masood"), M.D., as early as October 2009 and continued receiving primary care treatment from her until approximately September 2012.  (Tr. 135, 265, 267, 289, 293, 344, 346, 371, 373, 417).  The records suggest that Masood treated Mura for a variety of complaints, both mental and physical, including asthma, anemia, low back and thoracic spine pain, acid reflux,

---

[2] The administrative transcript shall be referred to as "Tr. __."

[3] Mura previously sought Disability Insurance Benefits ("DIB") and SSI.  (Tr. 118).  These claims were denied on March 20, 2006.  (*Id.*).  Thereafter, on March 29, 2011, she filed for benefits, alleging disability beginning on February 2, 2002.  (*Id.*).  On October 30, 2012, Administrative Law Judge Rosael Gautier determined that Mura was not disabled between March 21, 2006 and December 31, 2007, her date last insured.  (Tr. 118-32, 259).

[4] Those portions of the treatment records that are relevant to this decision are recounted herein.

anxiety, and depression. (*Id.*). Beginning in December 2012, Mura began receiving primary care treatment from Susan Areeckal ("Areeckal"), M.D. (Tr. 353). The record suggests that Mura continued to receive treatment from Areeckal until the time of the administrative hearing. (Tr. 359, 386, 393, 395, 397, 400, 407).

On May 2, 2011, Masood completed a physical assessment for determination of employability relating to Mura. (Tr. 375-78). Masood reported that Mura suffered from shoulder and back pain and was unable to use public transportation or to squat. (*Id.*). Masood opined that Mura was "very limited" in her ability to walk, stand, sit, push, pull, bend, lift, and carry. (*Id.*). The form defined "very limited" to mean an ability to perform those functions an estimated one to two hours per eight-hour workday. (*Id.*).

## DISCUSSION

### I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

4

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

### A. The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 11-24). Under step one of the process, the ALJ found that Mura had not engaged in substantial gainful activity since November 6, 2012, the application date. (Tr. 13). At step two, the ALJ concluded that Mura had the severe impairments of anxiety disorder, depressive disorder, asthma, obesity, and degenerative disc disease of the lumbar spine. (*Id.*). The ALJ concluded that Mura's left shoulder impairment, bilateral knee impairment, plantar fasciitis, heel spurs, bursitis, and acid reflux were not severe. (Tr. 13-14). According to the ALJ, her medical records did not indicate that she was currently receiving treatment for her alleged

5

shoulder, knee, and foot impairments. (*Id.*). At step three, the ALJ determined that Mura did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 14-16). With respect to Mura's mental impairments, the ALJ found that Mura suffered from mild restrictions in activities of daily living and moderate difficulties in maintaining concentration, persistence and pace, and social functioning. (*Id.*). The ALJ concluded that Mura had the Residual Functional Capacity ("RFC") to perform light work, but that she was limited to performing simple, routine tasks, requiring only occasional interaction with coworkers and the general public, and needed to avoid concentrated exposure to respiratory irritants. (Tr. 17-23). At steps four and five, the ALJ determined that Mura was unable to perform any past relevant work, but that other jobs existed in the national economy that she could perform, including the positions of agriculture produce sorter and cleaner/housekeeping. (Tr. 23-24). Accordingly, the ALJ found that Mura was not disabled. (*Id.*).

B.  **Mura's Contentions**

Mura contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 11-1). First, Mura maintains that the ALJ failed to fulfill his duty to develop the record by obtaining treatment records from Mura's primary care physicians. (*Id.* at 14-18). Next, Mura contends that the ALJ's RFC assessment was not based upon substantial evidence because he erred in evaluating the opinion evidence contained in the record. (*Id.* at 18-30). According to Mura, the ALJ improperly rejected Masood's opinion as to her physical limitations. (*Id.* at 19-20, 24-26). Additionally, Mura maintains that that ALJ improperly rejected the opinions of her other treating physicians as to her mental limitations. (*Id.* at 19-24). Finally, Mura contends that the ALJ improperly rejected the most restricting limitations of the consultative psychiatric examiner's

6

opinion (*id.* at 26-28) and improperly relied upon the opinions of Dr. Eurenius as to Mura's physical limitations and Dr. Kamin as to Mura's mental limitations (*id.* at 28-30).

II.     **Analysis**

I turn first to Mura's contention that the ALJ's RFC assessment was flawed because the ALJ improperly discounted Masood's opinion. (*Id.* at 19-20, 24-26). In his decision, the ALJ accorded no weight to Masood's opinion on the grounds that "it [was] illegible, and was completed in 2011, prior to the current period at issue." (Tr. 22). Mura contends that neither reason justified the ALJ's rejection of the only opinion from a treating source regarding her physical limitations. I agree.

Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) ("the ALJ [must] give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence"). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

> (1) the frequency of examination and length, nature, and extent of the treatment relationship,
>
> (2) the evidence in support of the physician's opinion,
>
> (3) the consistency of the opinion with the record as a whole,
>
> (4) whether the opinion is from a specialist, and
>
> (5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct that the ALJ should "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)).

In his decision, the ALJ explained that he rejected Masood's opinion because it was illegible. (Tr. 22). I have reviewed the handwritten opinion and, contrary to the ALJ's characterization, find that it is almost entirely legible (and is summarized above). (Tr. 375-78). Masood's opinion, through the use of checkmark boxes, indicated significant physical limitations due to back and shoulder pain. (*Id.*). Although other reasons may exist to discount the opinion, the ALJ's determination to discount a legible treating physician opinion on the grounds that it is illegible was improper; at the very least, the ALJ should have contacted Masood to decipher those portions the ALJ found to be illegible.[5] *See Drozdowski v. Colvin*, 2016 WL 5402698, *8

---

[5] On March 26, 2012, the regulations were amended to delete the provision that imposed a duty to recontact a treating physician "when the report from [a claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not [contain all the necessary information,] [or does not] appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Quinn v. Colvin*, 2016 WL 4255020, *12 n.2 (W.D.N.Y. 2016) (quoting 20 C.F.R. § 404.1512(e) (before amendment)). Thus, where an ambiguity concerns an opinion provided by a treating physician, the ALJ has "discretion to 'determine the best way to resolve the inconsistency or insufficiency' based on the facts of the case." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496,

(W.D.N.Y. 2016) ("[t]here may be reasons to discount this opinion or to give greater weight to other conflicting testimony and opinion evidence in the record, but the ALJ erred by failing to specifically state those reasons"); *Stewart v. Colvin*, 2015 WL 4546050, *8 (W.D.N.Y. 2015) ("plaintiff's treating physician's notes were contained within the record but were illegible[;] . . . the ALJ should have endeavored to clarify the treatment notes rather than simply ignore them and conclude that no evidence in the record supported plaintiff's reports of her symptoms"); *Clark v. Astrue*, 2010 WL 3036489, *4 (S.D.N.Y. 2010) ("although the psychological expert remarked that the treatment records were often illegible, . . . and the ALJ noted that the records were of 'rather poor quality,' . . . these facts alone do not constitute 'good reasons' to disregard the treating physician's opinion"); *Jackson v. Barnhart*, 2008 WL 1848624, *8 (W.D.N.Y. 2008) ("[the ALJ] should have obtained more detailed and clearer statements from her treating physician, especially since the medical records which appear in the administrative record are often illegible[;] . . . [t]here is no way for this court to determine whether the illegible information in these reports might have provided further support for plaintiff's claim") (internal quotations and brackets omitted).

        The ALJ also rejected Masood's opinion – the only opinion from a treating physician regarding Mura's physical capabilities – because it predated the period at issue. (Tr. 22). According to the government, the ALJ correctly rejected the opinion because the record does not reflect that Masood treated Mura during the period after she applied for benefits. (Docket # 12-1 at 19). Although the timing of a treating physician's report is plainly relevant to the ALJ's determination of the weight, if any, to give it, a treating physician's opinion need not

---

505 (S.D.N.Y. 2014) (quoting 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1)). The regulations nonetheless continue to "contemplate the ALJ recontacting treating physicians when 'the additional information needed is directly related to that source's medical opinion.'" *Jimenez v. Astrue*, 2013 WL 4400533, *11 (S.D.N.Y. 2013) (quoting *How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651, 10,652 (Feb. 23 2012)).

be rejected solely because it predates the relevant time period. *See Drozdowski v. Colvin*, 2016 WL 5402698 at *8 (remanding with instructions for ALJ to consider treating source opinions given prior to the alleged onset date; "not every medical opinion provided before an alleged onset date is necessarily irrelevant"); *Burdick v. Colvin*, 2015 WL 8352320, *7 (D. Vt.) ("[a]lthough [the treating physicians] treated [plaintiff] prior to the application date . . . , their treatment notes and opinions are relevant to [plaintiff's] condition during the alleged disability period and to the issue of whether [another opinion is] consistent with other medical evidence of record[;] ALJs 'may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date,' when, as here, there is no evidence of deterioration or progression of symptoms") (quoting *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007)), *report and recommendation adopted*, 2015 WL 8481849 (D. Vt. 2015); *Binder v. Comm'r of Soc. Sec.*, 2016 WL 4079533, *4 (N.D.N.Y. 2016) ("[i]t is true that courts have found opinions provided before the onset date to be irrelevant in certain situations[;] . . . [h]owever, this [c]ourt does not conclude that *every* opinion provided before an alleged onset date is irrelevant, nor does it believe that [the treating physician's] opinion is"); *Green v. Barnhart*, 2009 WL 68828, *9 (W.D.N.Y. 2009) ("[t]he ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms") (quotations omitted).

Although opinions from physicians who did not treat the claimant during the relevant time period are not entitled to controlling weight, *see Rogers v. Astrue*, 895 F. Supp. 2d 541, 549 (S.D.N.Y. 2012) ("[t]he treating physician rule . . . does not technically apply when the physician was not the treating physician at all during the relevant time period") (citing *Monette v. Astrue*, 269 F. App'x 109, 112 (2d Cir. 2008)), such opinions may be entitled to significant

weight, *see Monette v. Astrue*, 269 F. App'x at 113 ("the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight"); *Tricarico v. Colvin*, 2015 WL 5719696, *7 (E.D.N.Y. 2015) (noting the ALJ properly gave significant weight to treating physician opinion "even though th[e] opinion was completed before the claimant's alleged onset date, because . . . the record did not show any significant change in [plaintiff's] condition since the last time [the doctor] examined him"), *aff'd*, 2017 WL 902603 (2d Cir. 2017); *Rogers v. Astrue*, 895 F. Supp. 2d at 550 (treating physician's opinion was entitled to significant, but not controlling, weight, where physician did not treat plaintiff during the relevant period). In this case, Masood apparently treated Mura for several years immediately preceding her application date. Indeed, it appears that Masood examined Mura in September 2012, less than two months prior to her application. Nothing in the record suggests that Mura's condition changed significantly after she stopped treating with Masood. Rather, the record suggests that Mura continued to suffer from the same ailments for which she sought treatment from Masood. Although Masood's opinion was not entitled to controlling weight, the ALJ did not explicitly consider whether it was entitled to significant weight, given the substantial treatment history. Under such circumstances, remand for consideration and weighing of the treating physician is appropriate.

    Moreover, throughout his opinion, the ALJ explicitly questioned whether Mura continued to suffer from many of her alleged physical ailments because the record contained no indication that she received ongoing treatment for those complaints. (Tr. 14, 18, 21). The ALJ reasoned that Mura's apparent lack of ongoing treatment supported his conclusion that her physical complaints were not as disabling as she alleged. (Tr. 21 ("The claimant's lack of pursuit of even routine treatment (such as imaging studies and physical therapy) for all these

11

conditions suggests that they are not as disabling as alleged")). Similarly, he questioned the severity of her mental health limitations and her credibility based upon apparent gaps in her mental health treatment records. (Tr. 21 ("She did not receive mental health treatment for a prolonged period of time, despite agonizing complaints and availability of treatment")). He also discounted her credibility based upon her apparent failure to seek treatment for her physical pain. (Tr. 21 ("[f]or instance, while the claimant reported at the consultative examination that she felt increasing aching in her left shoulder, particularly when she tried to elevate her arm, she has not had this evaluated . . . [;] [t]he claimant has not sought any treatment for this issue even a year after her complaints began"; "while the claimant reported a bilateral knee impairment at the consultative examination particularly the left knee when climbing and descending stairs, she has not had this evaluated . . . [;] [t]he claimant has not sought any treatment for this issue")).

    The record demonstrates that Mura received ongoing treatment from Masood over the course of several years through September 2012, less than two months prior to her application date. (Tr. 135, 259, 265, 267, 293, 344, 346, 371, 373, 417). Mura began receiving primary care treatment from Areeckal in December 2012 and continued treating with her throughout the relevant period, including at the time of the hearing. (Tr. 359, 386, 393, 395, 397, 400, 407). The record suggests that Mura's primary care providers addressed both physical and mental ailments. (Tr. 41). According to Mura, although she stopped seeing a psychotherapist due to her difficulty in attending appointments, she discussed her ongoing mental health issues with her primary care physicians, and they apparently prescribed mental health medications to her. (Tr. 41). It is clear that Masood's treatment records were available; indeed, they were part

of the record on Mura's previous application for benefits.[6]  (Tr. 135).  Despite that, this record

contains none of Masood's treatment records and only the notes from Mura's initial visit with

Areeckal.  The absence of Mura's primary care treatment records is especially concerning

because the ALJ's decision appears to have been influenced by his assumption that Mura did not

treat for her complaints – an assumption that may be belied by the treatment notes.  *See*, *e.g.*,

*Welsh v. Colvin*, 2016 WL 836081, *13 (W.D.N.Y. 2016) ("[a]lthough I do not find that the ALJ

erred by not making additional efforts to obtain the treatment notes, I agree with [plaintiff] that

the ALJ was not permitted to draw any adverse inferences against [plaintiff] because the records

had not been submitted").

        On remand, the ALJ should evaluate Masood's opinion and, if any parts are

illegible, contact Masood to translate those portions.  Additionally, the ALJ should attempt to

obtain the treatment notes from Masood and Areeckal to evaluate the extent to which, if at all,

Mura sought and received treatment from them for her physical and mental impairments.

"Because further development of the record may affect the ALJ's determinations regarding

[Mura's] credibility and capability, [Mura's] remaining arguments need not be considered at this

time."  *Girolamo v. Colvin*, 2014 WL 2207993, *9 (W.D.N.Y. 2014).

## CONCLUSION

        For the reasons stated above, the Commissioner's motion for judgment on the

pleadings **(Docket # 12)** is **DENIED**, and Mura's motion for judgment on the pleadings **(Docket

# 11)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is

---

[6] Although these records were part of the previous administrative record, it does not appear that they were considered by the ALJ in her earlier determination because that determination concerned whether Mura was disabled between March 21, 2006 and December 31, 2007.  (Tr. 130-31).

remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
 June 13, 2017